William ARDARY; Diane M. Houston; Kevin Ardary; William C. Ardary, MD, Plaintiffs–Appellants,

v.

AETNA HEALTH PLANS OF CALIFORNIA, INC., formerly dba: Aetna Health Plans of Southern California, Inc.; Aetna Life & Casualty Company; Aetna Life Insurance Company; AHP Holdings, Inc.; Aetna Health Management, Inc.; Partners Acquisition Company; Arrowest Physician Association; Judith Hendrix, Defendants–Appellees.

No. 94–56552.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 1996.

Decided Oct. 21, 1996.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 26, 1996.*

---

* Judges O'Scannlain and Trott have voted to reject the suggestions for rehearing en banc, and Judge

Van Sickle has so recommended.

Sharon J. Arkin, Shernoff, Bidart & Darras, Claremont, California, for the plaintiffs-appellants.

William A. Helvestine, Cynthia Becker, Epstein Becker & Green, San Francisco, California, and Barry S. Landberg, Terri D. Keville, Manatt, Phelps & Phillips, Los Angeles, California, for the defendants-appellees.

Before O'SCANNLAIN and TROTT, Circuit Judges, and VAN SICKLE,** District Judge.

** The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. Aetna Health Plans of California, Inc., formerly dba Aetna Health Care Plans of Southern California, Inc., Aetna Life and Casualty Company, Aetna Life Insurance Company, AHP Holdings, Inc., Aetna Health Management, Inc., Partners Acquisition Company, and Judith Hendrix are collectively referred to herein as "Aetna."

O'SCANNLAIN, Circuit Judge:

We must decide whether state law claims for wrongful death against a private Medicare provider are preempted by the Medicare Act.

## I

William Ardary, Kevin Ardary, William C. Ardary, and Diane M. Houston ("the Ardarys") are the surviving husband and children of the late Cynthia Ardary. In July 1991, William and Cynthia attended a presentation given by Judith Hendrix ("Hendrix"), a marketing representative of Aetna Health Plans of California.[1] Because William and Cynthia resided in the relatively isolated community of Big Bear, California, they expressed concern to Hendrix about emergency care and the availability of more sophisticated treatment. Hendrix allegedly told William and Cynthia that should the need arise, Aetna would immediately authorize transfer to a larger facility such as Loma Linda University Medical Center. As a result of Hendrix's presentation, Cynthia, a Medicare beneficiary, enrolled in Aetna's Senior Choice health maintenance organization plan ("Plan"). The Plan was administered by Arrowest Physician Association ("Arrowest") and provided Medicare, major medical and hospitalization, benefits pursuant to a contract with the U.S. Department of Health and Human Services, Health Care Financing Administration ("HCFA").

On May 9, 1993, Cynthia suffered a heart attack. She was taken to the Bear Valley Community Hospital, a small rural facility near her family's home. The hospital had neither intensive nor cardiac care facilities. The Ardarys allege that in spite of repeated requests from her Aetna-approved physician, Arrowest refused to authorize airlift transportation for Cynthia to Loma Linda University Medical Center.[2] Allegedly because of

2. At oral argument, Arrowest claimed that they could not certify the transfer under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C.A. § 1395dd. EMTALA imposes two requirements on any hospital which participates in the Medicare program: the hospital must conduct appropriate medical screening to a

Arrowest's failure to authorize the airlift, Cynthia died at Bear Valley.

On January 25, 1994, Cynthia's husband and children filed a wrongful death complaint against Aetna and Arrowest in California state court seeking general and punitive damages on the basis of six state law theories of recovery including negligence, intentional and/or negligent infliction of emotional distress, intentional and/or negligent misrepresentation, and professional negligence.[3] The complaint did not seek recovery of Medicare benefits; however, the Ardarys conceded that their claims were all "predicated on" Arrowest's failure to authorize the airlift.[4]

In February 1994, Aetna and Arrowest timely removed the action to federal court. They argued that removal was proper on the grounds that federal-question jurisdiction existed because the Ardarys' claims all related to the denial of Medicare benefits and therefore were preempted by federal law. Once in federal court, however, Aetna and Arrowest moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for failure to state a claim, on the ground that the Ardarys' exclusive remedy for their action "relating to" the denial of Medicare benefits was the administrative appeals process provided by HCFA. The district court granted the motion to dismiss in a one-page order that provided no reasons for the court's decision. The Ardarys timely appealed.

## II

We first consider the Ardarys' argument that the district court erred in finding that the state law claims all related to the denial of Medicare benefits and therefore were preempted by the Medicare Act, 42 U.S.C. § 1395, with such claims exclusively administered and reviewed by HCFA.

## A

The Medicare Act ("Act") is found in Part A of Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. The Act provides insurance for the cost of hospital and related post-hospital expenses, but precludes reimbursement for services which are not "reasonable and necessary" for the diagnosis or treatment of illness or injury.

Section 405(g) of Title 42, which falls within a different section of the Social Security Act, provides for *judicial review* of old-age and disability claims *only after* the Secretary of Health and Human Services renders a "final decision" on the claim.[5] Pursuant to 42 U.S.C. § 1395ff(b), this provision is expressly incorporated into those portions of the Act which apply to HMOs. Pursuant to her rulemaking authority, the Secretary has provided that a "final decision" is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review.[6]

---

person visiting its emergency room, and a hospital generally may not transfer out of hospital patient whose medical condition has not been stabilized. *Brewer By and Through Brewer v. Miami County Hosp.*, 862 F.Supp. 305 (D.Kan. 1994). Whether Cynthia Ardary was stabilized is, of course, a question of fact.

3. The complaint alleges a cause of action against: (1) Aetna, Arrowest and Hendrix for negligence; (2) Aetna and Arrowest for intentional infliction of emotional distress; (3) Aetna and Arrowest for negligent infliction of emotional distress; (4) Aetna and Hendrix for intentional misrepresentation; (5) Aetna and Hendrix for negligent misrepresentation; and (6) Hendrix for professional negligence. Complaint ¶¶ 23–100.

4. "It is critical to note in this context that the wrongful death action is predicated on the allegation that the benefits were, in fact, owed and were, in fact, wrongfully denied. Moreover, the plaintiffs in such an action will also be required to demonstrate, at trial, that the wrongful denial

of benefits was the proximate cause of the death." Appellant's Brief at 20–21.

5. Section 405(g) reads in relevant part:
   Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides.... The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.
   42 U.S.C. § 405(g).

6. The exclusive administrative appeals process applies to all benefits determinations. 42 U.S.C. § 405(b); 1395mm(c)(5)(A); 42 C.F.R.

■ In addition, even when judicial review is available it is strictly limited. Section 1395ii of Title 42 applies the proscriptions of 42 U.S.C. § 405(h) to the Act. Section 405(h) states as follows:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*

42 U.S.C. § 405(h) (emphasis added).[7] Discussing this provision, the Supreme Court of the United States has held that the appropriate inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim "arises under" the Act. The Court stated that

> [t]he third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review of all "claim[s] arising under" the Medicare Act. Thus, to be true to the language of the statute, *the inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim "arises under" the Act....*

*Heckler v. Ringer,* 466 U.S. 602, 614–15, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984) (internal citations omitted).

**B**

This case presents a thorny jurisdictional question: does the Medicare Act, which provides for exclusive administrative review of all claims "arising under" that Act, apply to preclude the heirs of a deceased Medicare beneficiary from bringing state law claims for wrongful death against a private Medicare provider when those claims do not seek recovery of Medicare benefits but instead seek compensatory and punitive damages on the grounds that the provider both improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary?[8]

■ Resolution of this question turns on whether the state law claims are ones "arising under" the Act. Aetna and Arrowest argue that the entire complaint "arises under" the Act because the Ardarys' claims all relate to a dispute concerning the denial of Medicare benefits.[9] Aetna and Arrowest also maintain that "[t]he courts similarly left no doubt that the Medicare Act precludes all types of civil litigation outside the administrative appeals process" in this case. Appellee's Brief at 12. We disagree with this over-inclusive reading of the "arising under" language.

First, the Ardarys' complaint does not "include any claims in which '*both* the standing and the substantive basis for the presentation' of the claims" is the Act. *Heckler v. Ringer,* 466 U.S. 602, 615, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984) (citing *Weinberger v. Salfi,* 422 U.S. 749, 760–61, 95 S.Ct. 2457, 2464–65, 45 L.Ed.2d 522 (1975)) (emphasis added). The Ardarys seek general and punitive damages on the basis of negligence, intentional and/or negligent infliction of emotional distress, intentional and/or negligent misrepresentation, and professional negligence. The standing for these six

---

§ 417.606. Such disputes must first be brought for reconsideration to the organization that made the initial determination, 42 C.F.R. § 417.616 and 417.620, and HCFA. 42 C.F.R. § 417.620. If the dispute is not resolved favorably by HCFA, and providing the amount in controversy exceeds $100, a hearing may be requested before an administrative law judge. 42 C.F.R. § 417.630, 417.632. A further appeal may be made to the agency's Appeals Council and, should the amount in controversy exceed $1,000, a dissatisfied party may thereafter seek review in federal court. 42 C.F.R. §§ 417.634, 417.636.

7. Section 405(h) thus makes § 405(g) the sole avenue for judicial review of all "claim[s] arising under" the Medicare Act.

8. The parties do not cite any cases directly addressing the question raised in this case.

9. Aetna and Arrowest frame the issue as "whether Congress intended to allow the state court actions challenging Medicare benefits determinations when it barred such actions in federal court." Appellee's Brief at 12.

claims are state common law theories and not the Act. Second, the state law claims are not "inextricably intertwined" with the denial of benefits. Although the Ardarys concede that their wrongful death complaint is "predicated on" Arrowest's failure to authorize the airlift transfer, the claims are not "inextricably intertwined" because the Ardarys are *at bottom* not seeking to recover *benefits*. *Ringer*, 466 U.S. at 614, 104 S.Ct. at 2021. In contrast, the Court in *Ringer* observed that

> [i]t seems to us that it makes no sense to construe the claims of those three respondents as anything more than, at bottom, a claim that they should be paid for their BCBR surgery. Arguably respondents do assert objections to the Secretary's "procedure" for reaching her decision—for example, they challenge her decision to issue a generally applicable rule rather than to allow individual adjudication, and they challenge her alleged failure to comply with the rulemaking requirements of the APA in issuing the instructions and the rule. We agree with the District Court, however, that those claims are *"inextricably intertwined"* with respondents' claim for benefits.

*Id.* (emphasis added).

Although the Supreme Court in *Ringer* instructed us to read the term "arising under" broadly, it "recognized that in certain special cases, deference to the Secretary's conclusion as to the utility of pursuing the claim through administrative channels is not always appropriate." *Id.* at 618, 104 S.Ct. at 2023. For instance, the Court commented on one such case, "where the plaintiff asserted a procedural challenge to the Secretary's denial of a pretermination hearing, a claim that was wholly 'collateral' to his claim for benefits, and where he made a colorable showing that his injury could not be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 330–32, 96 S.Ct. 893, 900–01, 47 L.Ed.2d 18 (1976)). Aside from the conclusion that the Ardarys' state law tort claims are not "inextricably intertwined" with benefit determinations, Cynthia's death also cannot be remedied by the retroactive authorization or payment of the airlift transfer.

Aetna and Arrowest argue that *Bodimetric Health Services, Inc. v. Aetna Life & Casualty*, 903 F.2d 480 (7th Cir.), *cert. denied*, 498 U.S. 1012, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990), should be read for the proposition that any claim related to the denial of Medicare benefits "arises under" the Act. In that case, Bodimetric Health Services owned and operated home health agencies ("HHAs") that provided in-home medical services. All of the HHAs were certified as Medicare providers which obtained their reimbursements for the medical services from fiscal intermediaries which acted on behalf of HCFA. Pursuant to 42 U.S.C. § 1395h, Bodimetric nominated Aetna to serve as its fiscal intermediary. Under this situation, Aetna provided Medicare reimbursement to Bodimetric's HHAs for services rendered.

Bodimetric alleged that in 1985, the Secretary released a contractor evaluation critical of Aetna's performance. Bodimetric alleged that because of this evaluation, Aetna started regularly to deny Bodimetric's applications for reimbursement so that Aetna would improve its contract performance evaluation and retain its contract with HCFA as a fiscal intermediary. Because of the denials, Bodimetric lost $8 million. Bodimetric then sued Aetna, seeking damages for fraud and other tort causes of action. Aetna moved to dismiss for lack of subject matter jurisdiction, alleging that the exclusive review provisions of the Act barred Bodimetric from pursuing its challenge in federal court, and the district court granted the motion. On appeal, the Seventh Circuit stated that the issue was "whether the allegedly improper application of 'exclusive' review mechanisms to Bodimetric's claim is actionable in the district court." *Id.* at 482.

The Seventh Circuit noted that "whether Bodimetric's claim for damages is inextricably intertwined with a claim for Medicare benefits or wholly collateral to such a claim (or somewhere in between) depends largely on whether this appeal more closely resembles *United States v. Erika*, 456 U.S. 201 [102 S.Ct. 1650, 72 L.Ed.2d 12] (1982) or *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 [106 S.Ct. 2133, 90 L.Ed.2d 623] (1986)." *Id.* at 484. In *Erika*, "the Court held that section 1395ff barred judicial review of a hearing officer's 'amount

of benefits' determination under Part B of the Medicare Act." *Id.* However, in *Michigan Academy,* "the Court concluded that section 1395ff does *not* bar judicial review of claimant challenges *to the validity of administrative regulations* promulgated under the Medicare Act." *Id.* We conclude that the Ardarys' state law claims do not fall under either of the two types of claims reviewed in *Erika* and *Michigan Academy.*

The Seventh Circuit concluded that *"Erika* and *Michigan Academy* recognized the differences between two types of Medicare claims: challenges to the amount of benefits to be paid are not reviewable, while challenges to the regulatory scheme under which the amount of benefits is calculated are reviewable." *Id.* at 485. Although the Seventh Circuit properly identified the "differences between two types of Medicare claims," the Supreme Court's decisions in *Erika* and *Michigan Academy* certainly do not suggest, at least to this court, that this dichotomy (substantive or procedural) is *the* standard for making the critical judgment call about what "arises under" the Act. It should be stressed that the Supreme Court has already rejected that "separation of the particular claims ... into 'substantive' and 'procedural' elements." *Ringer,* 466 U.S. at 614, 104 S.Ct. at 2021.

Without clear guidance from the Supreme Court or Congress on these facts, we must begin with the strong presumption that Congress does not intend to pre-empt state law causes of action with a federal statute. *See, e.g., Medtronic, Inc. v. Lohr,* —— U.S. —— ——, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996) ("[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." ); *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) ("[S]tate law is pre-empted if the law actually conflicts with federal law." ); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) ("[S]tart with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." ). We find nothing in the legislative history to suggest that the Act was designed to abolish all state remedies which might exist against a private Medicare provider for torts committed during its administration of Medicare benefits pursuant to a contract with HCFA. *See Michigan Academy,* 476 U.S. at 679–80, 106 S.Ct. at 2140–41. Indeed, the "legislative history of both the statute establishing the Medicare program and the 1972 amendments thereto provides specific evidence of Congress' intent to foreclose review only of 'amount determinations'—*i.e.,* those 'quite minor matters,' 118 Cong.Rec. 33992 (1972) (remarks of Sen. Bennett), remitted finally and exclusively to adjudication by private insurance carriers in a 'fair hearing.' " *Michigan Academy,* 476 U.S. at 680, 106 S.Ct. at 2141.

We are most reluctant to adopt Aetna and Arrowest's over-inclusive reading of the "arising under" language "without a showing of clear and convincing evidence to overcome the strong presumption that Congress did not mean to prohibit all judicial review." *Id.* (citations omitted). Absent a strong argument from Aetna and Arrowest, this presumption *still remains in force.*

Contrary to Aetna and Arrowest's assertions, *Bodimetric* should not be taken to imply that private Medicare providers and their representatives cannot be held responsible in their individual capacity for tortious acts committed in the context of the denial of Medicare benefits. The removal of the right to sue the private Medicare provider for its torts would result in an inequitable and substantial dilution of the rights of patients. Aetna and Arrowest's argument that the claims are "inextricably intertwined" with the claim that Cynthia was improperly denied benefits simply misapplies *Ringer* and *Bodimetric* on these facts.

Because the instant state law claims do not "arise under" the Act, we hold that the exclusive administrative procedures outlined for resolution of benefit determinations do not preempt the Ardarys' complaint.

### III

■ We next consider whether the district court erred in removing the action to federal court. The Medicare statutes, as applied to an HMO contract, do not, of course, contain a

preemption provision. The Ardarys argue that the district court was without jurisdiction because there was no federal statutory preemption of their state law claims, and therefore no substantial federal question was raised. Because we hold that the Ardarys' state law claims do not "arise under" the Medicare Act, we must conclude that the action was improperly removed to federal court. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987).

### IV

For the foregoing reasons, the district court's judgment is reversed, and this case is remanded with instructions to the district court to remand the action to state court for further proceedings.

**REVERSED** and **REMANDED** with instructions.