**Kathryn A. PLOCICA, Individually and on behalf of The estate of Joseph W. Plocica, deceased; Timothy J. Plocica; Craig Plocica; Tanya M. Plocica; and Jennifer L. Plocica,**

v.

**NYLCARE OF TEXAS, INC.; Nylcare Health Plans, Inc.; Nylcare Health Plans of the Southwest, Inc., d/b/a Nylcare 65; Lone Star Health Plan, Inc.; Prime Provider Corp. of Texas; Magellan Health Services, Inc; Magellan Behavioral Health, Inc.; Continuum Behavioral Healthcare Corporation; Merit Behavioral Care**

Corporation; Inroads Behavioral Health Services of Texas, L.P.; Merit Behavioral Care Systems Corporation; Merit Behavioral Care of Texas, Inc.; American Biodyne, Inc.; and Gary Keith Neller, D.O.

No. 4:98–CV–1021–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

March 2, 1999.

George Parker Young, Friedman Young & Suder, Fort Worth, TX, for Kathryn A. Plocica, Timothy J. Plocica, Craig T. Plocica, Tanya M. Plocica, Jennifer L. Plocica.

Mark Alan Evetts, Geoffrey Scott Harper, Susman Godfrey, Dallas, TX, Neal Stuart Manne, Susman Godfrey, Houston, TX, for Nylcare of Texas, Inc., Nylcare

Health Plans Inc., Nylcare Health Plans of the Southwest, Inc., Lone Star Health Plan, Inc., Prime Provider Corp. of Texas.

R. Brent Cooper, Clayton E. Bailey, Cooper & Scully, Dallas, TX, for Magellan Health Services Inc., Magellan Behavioral Health Inc., Continuum Behavioral Healthcare Corporation, Merit Behavioral Care Corporation, Inroads Behavioral Health Services of Texas Inc., Merit Behavioral Care System Corporation, Merit Behavioral Care of Texas Inc., American Biodyne Inc., Gary Keith Neller, D.O.

### ORDER

MAHON, Senior District Judge.

Now before the Court is Plaintiffs' Motion to Remand filed December 22, 1998 in the above-styled and numbered cause. Defendants have responded in opposition and Plaintiffs have replied thereto.[1] After considering the briefs of the parties, the record before the Court in this matter, and the applicable law, the Court makes the following determination.

### I. OVERVIEW

In July of 1998, Joe Plocica, at the age of 68, tragically took his own life by ingesting anti-freeze in his garage. According to Plaintiffs, Mr. Plocica's suicide was a final manifestation of a history of severe depression "which, because of Defendants' actions, was not properly treated." Plaintiffs' Motion to Remand at 7. Plaintiffs, the surviving spouse and children of Mr. Plocica, have brought the present case seeking damages from Defendants for Mr. Plocica's death.

1. In fact, the parties have each submitted further letter briefs regarding the remand issue before the Court.

2. The Notice of Removal was filed by all Defendants except Gary Keith Neller, D.O. However, Defendant Neller filed a Consent to Removal on November 18, 1998. Thus, all

### II. PROCEDURAL BACKGROUND

The present case was commenced on October 19, 1998 in the 141st Judicial District Court in and for the County of Tarrant, State of Texas, Cause No. 141–175780–98. Defendants timely filed a Notice of Removal on November 18, 1998 and the case was assigned to this Court.[2]

In their state court Original Petition, Plaintiffs assert several claims against Defendants including "Managed Care Liability," wrongful death and survival, and gross negligence.[3] In its Notice of Removal, Defendants assert that all of Plaintiffs' claims are preempted by the Medicare Act, 42 U.S.C. § 1395, *et seq.*

On December 22, 1998, Plaintiffs timely filed the present Motion to Remand claiming that the absence of any basis for federal subject matter jurisdiction mandates that this case be remanded to state court. The parties have fully briefed the issue and the Court now considers the arguments presented.

### III. DISCUSSION

This case presents the Court with the relatively novel issue regarding the propriety of federal preemption of common law claims asserted against a health maintenance organization ("HMO") for alleged inadequate quality of medical care services. The parties have presented the Court with a variety of recent court decisions from other federal district and appellate courts on the subject. The Court now endeavors to consider the preemption issue in the present case.

Title 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides, in relevant part, the following:

Defendants join in the removal of the present case.

3. Plaintiffs also allege various forms of vicarious liability based upon, *inter alia*, allegations of respondeat superior, agency relationships, and corporate veil piercing theories.

No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim *arising under* this subchapter.

42 U.S.C. § 405(h) (emphasis added). The Supreme Court has construed the appropriate inquiry in determining whether § 405(h) bars federal question jurisdiction must be whether the claim "arises under" the Medicare Act. *Heckler v. Ringer*, 466 U.S. 602, 614–615, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984).

Defendants, as the removing parties, have the burden of establishing federal court jurisdiction over the state court lawsuit brought by Plaintiffs. *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir.1995); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988). Since the removal of a case works to deprive a state court of an action properly before it, strict construction of the removal statute is required. *Carpenter*, 44 F.3d at 365–366.

The question of whether federal jurisdiction exists is determined pursuant to the "well-pleaded complaint" rule. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Simply put, this Court is to determine the existence of federal jurisdiction "solely from what appears on the face of the plaintiff's complaint." *Id.; see also, Carpenter*, 44 F.3d at 366; *Willy*, 855 F.2d at 1165. Moreover, the Court must also keep in mind that the well-pleaded complaint rule works to make the plaintiff master of the claims presented in a lawsuit. *Carpenter*, 44 F.3d at 366, (and cases cited therein).

An exception to the well-pleaded complaint rule exists where there is complete preemption of the state claim by federal law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Complete preemption applies only in extraordinary circum-stances when Congress intends not only to preempt certain state laws, but replace those laws with federal laws. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Willy*, 855 F.2d at 1165. It requires a clearly manifested congressional intent to make causes of action removable to federal court. As the United States Supreme Court stated in *Caterpillar*:

On occasion, the Court has concluded that the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co., supra* at 65, 107 S.Ct. 1542. Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *See Franchise Tax Board, supra* at 24, 103 S.Ct. 2841 ("If a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.").

482 U.S. at 393, 107 S.Ct. 2425. However, the Supreme Court further emphasized that

[t]he presence of a federal question ... in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule— that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.... a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the

plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.

*Id.* at 398–99, 107 S.Ct. 2425.

■ In a recent decision issued within this district and division, District Judge John McBryde held that

[i]f there is preemption but not complete preemption, remand is required:

The difference between preemption and complete preemption is important. When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.

*Cyr v. Kaiser Foundation Health Plan of Texas, Inc.,* 12 F.Supp.2d 556 (N.D.Tex. 1998) (J. McBryde), (quoting *Dukes v. U.S. Healthcare Inc.,* 57 F.3d 350, 355 (3rd Cir.), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995)). More to the point, "unless the court is persuaded that there has been a complete preemption, the court is not required to resolve the defensive preemption issues." *Id.* at 567; *see also Caterpillar,* 482 U.S. at 398, 107 S.Ct. 2425 ("the fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted ... does not establish that they are removable to federal court").

■ In the present case, Defendants assert that complete preemption exists under the Medicare Act such that the removal of Plaintiffs' claims is appropriate. On the other hand, Plaintiffs assert that:

Defendants' efforts to invoke this Court's jurisdiction based upon the doctrine of complete preemption must fail where Plaintiffs make no claims for any benefits which may have been denied but seek relief where Plaintiffs make no claims for any benefits which may have

been denied but seek relief based upon Defendants' failure to use ordinary care in "influencing," "controlling," "participating in," and making health care treatment decisions.

Plaintiffs' Motion to Remand at 11. (citation to Plaintiffs' Petition omitted).

An examination of the allegations in Plaintiffs' Petition reveals the following summary overview of facts. Joe Plocica, a 68 year old male with a long history of major depression and previously attempted suicide attempts, was under ongoing treatment by Dr. Harold Eudaly, Jr. (Plaintiffs' Petition at 2). In March of 1997, Mr. Plocica overdosed on alcohol and Halcyon, at which time he underwent inpatient care. *Id.* He was subsequently discharged in April 1997 with a discharge final diagnosis of major depressive disorder, recurrent and severe. *Id.* It is believed by Plaintiffs that Mr. Plocica's 1997 bout of depression was triggered by a diagnosis of prostate carcinoma some two weeks prior. *Id.* By the Spring of 1998, although his carcinoma was in remission and his physical prognosis was strong, Mr. Plocica lost his nine-year position at Joshua's Christian Bookstore when that facility closed down and left Texas. *Id.*

On June 25, 1998, Joe Plocica was admitted to John Peter Smith Hospital due to an overdose. *Id.* The next day, June 26, 1998, he was transferred to the psychiatric floor of All Saints Hospital where he continued under the care of Dr. Eudaly and other medical professionals. *Id.* at 3. Mr. Plocica remained in the hospital until July 8, 1998, when he was discharged allegedly due to the actions of Defendants and in spite of Dr. Eudaly's written objections. *Id.*

The following day, July 9, 1998, during the early morning hours, Mr. Plocica was taken to All Saints emergency room. *Id.* Apparently some time during the evening of July 8 or the early morning of July 9, 1998, Mr. Plocica went to his garage and imbided a half-gallon of anti-freeze in an attempt to kill himself. *Id.* at 3–4. After

being maintained on life-support systems for a time, Mr. Plocica died from his self-inflicted injuries on July 17, 1998. *Id.* at 4.

In the present case, Plaintiffs' "well-pleaded complaint" is "Plaintiffs' Original Petition" filed on October 19, 1998 in the District Court, Tarrant County, Texas, 141st District. In their Original Petition, Plaintiffs allege several state law theories of recovery including the following causes of action against Defendants: (1) Managed Care Liability Claim pursuant to Texas Revised Civil Statute Annotated, Article 4590i, § 4.01, and § 88.001 *et seq.* of the Texas Civil Practice and Remedies Code, and (2) Wrongful Death and Survival Action pursuant to §§ 71.001–71.011, 71.021 of the Texas Civil Practice and Remedies Code and otherwise under Texas law. In their remand papers, Plaintiffs insist that their claims do not seek reimbursement for past or future medical procedures, hospitalization, or recovery for denial of any benefits. Plaintiffs' Motion to Remand at 4.

Moreover, after considering the allegations contained in Plaintiffs' Original Petition, and in light of the legal precedent presented by Plaintiffs, the Court determines that Plaintiffs are attacking: (1) the quality of the alleged medical decision making, influence and control exercised by Defendants, and (2) the allegedly negligent acts of Defendants in its medical decisions, diagnosis, and treatment of Mr. Plocica.

The Court rejects Defendants' characterization of Plaintiffs' original Petition as claims preempted by the Medicare Act. Simply put, the Court does not find that Plaintiffs' claims "arise under" the Medicare Act. In this regard, the Court finds the recent cases cited by Plaintiffs particularly instructive.

In *Ardary v. Aetna Health Plans of California, Inc.,* 98 F.3d 496 (9th Cir. 1996), the Ninth Circuit was faced with the question of "whether state law claims for wrongful death against a private Medicare provider are preempted by the Medicare Act." In *Ardary,* Mrs. Ardary suffered a heart attack and was taken to a small, inadequate rural hospital facility near her family's home. *Id.* at 497. It was alleged that, despite her Aetna-approved treating physician's repeated requests, Mrs. Ardary was denied authorization for airlift transportation to a more adequate treatment facility. *Id.* The Ardarys alleged that Mrs. Ardary died at the rural facility due to the Defendants' failure to authorize the airlift. *Id.* at 497–498.

The surviving Ardarys sued Aetna (the HMO plan) and Arrowest Physician Association (the plan administrator) for Mrs. Ardary's wrongful death under several state law theories of recovery, mainly based in allegations of negligence. *Id.* at 498. Importantly, the Ardarys "did not seek recovery of Medicare benefits; however, the Ardarys conceded that their claims were all 'predicated on' Arrowest's failure to authorize the airlift." *Id.* (footnote omitted).

In *Ardary,* Aetna and Arrowest removed the state court action filed by the Ardarys to federal court arguing that their claims were all related to the denial of Medicare benefits and were, therefore, preempted by the Medicare Act. *Id.* After considering the applicable law on the subject, much of which is presented to this Court by the parties, the *Ardary* Court held that the plaintiffs' state law tort claims were not "inextricably intertwined" with the denial of benefits such that preemption existed. *Id.* at 500. Moreover, the *Ardary* Court noted that Mrs. Ardary's death could not be remedied by retroactive authorization or payment of any benefit, in the *Ardary* case—the airlift transfer. *Id.*

Similarly, Plaintiffs in the present case argue that they are not seeking to recover for "denied coverage" or refusal to pay benefits. Plaintiffs' Motion to Remand at 4. Like the plaintiffs in *Ardary,* the Plocica's assert that "[p]ursuing the administrative Medicare appeal process, the remedy which Defendants appear to be arguing

for, would be a futile act since Joe Plocica is dead." *Id.* citing *Ardary*, 98 F.3d at 500.

Moreover, the *Ardary* decision is consistent with several other circuit and district court decisions on the issue. *See, Wartenberg v. Aetna U.S. Healthcare, Inc.*, 2 F.Supp.2d 273 (E.D.N.Y.1998); *see also, Grijalva v. Shalala*, 152 F.3d 1115 (9th Cir.1998); *Wright v. Combined Ins. Co. of America*, 959 F.Supp. 356, 364 (N.D.Miss. 1997); *Berman v. Abington Radiology Associates, Inc.*, 1997 WL 534804 (E.D.Penn. Aug. 14, 1997); *Burke v. Humana Ins. Co.*, 1995 WL 841678 (M.D.Ala. May 11, 1995).[4] The Court finds these authorities to be well-reasoned and persuasive.

In *Wartenberg*, an elderly woman, Ms. Lieberman, was admitted to a hospital emergency room because of a severe case of pneumonia and difficulty breathing. 2 F.Supp.2d at 274. Apparently, before Lieberman was in sufficient condition to be discharged, she was discharged from the hospital to a skilled care nursing home. *Id.* Although Lieberman's medicare benefit plan entitled her to receive up to 100 days of skilled care, she was notified by Defendant, her HMO, that she must be discharged from the facility or be responsible for all future expenses. *Id.* at 274–275. The Court further stated as follows:

> Lieberman was still extremely ill when she was discharged from the skilled care facility and returned to plaintiff's home. She remained in plaintiff's home for less than one week before being readmitted to the hospital in critical condition.... Despite her grave condition, Lieberman was once again discharged from the hospital, allegedly under [Defendant's] pressure, and readmitted to a skilled care facility. Within forty-eight hours, she was returned to the hospital in acute

respiratory distress, where she was attached to a respirator and placed in the intensive care unit.

*Id.* Lieberman died shortly thereafter. *Id.*

The *Wartenberg* Court, after considering the applicable law including the *Ardary* decision, concluded that the plaintiff's state law causes of action neither arose under nor were they preempted by the Medicare Act. *Id.* at 280. The Court determined that the plaintiff's claims were "not based on a request or claim for payment of benefits or for reimbursement, but rather on the tortious acts of a medicare benefit administrator." *Id.* Accordingly, the district court remanded the *Wartenberg* case to the state court for further proceedings. *Id.*

In the present case, the Court concludes, based upon the applicable law and the allegations in Plaintiffs' state court Original Petition, that Plaintiffs' claims are not preempted by the Medicare Act. In short, Plaintiffs' allegations do not seek to recover payment or reimbursement for any allegedly denied benefit. Instead, just as the plaintiffs in *Ardary* and *Wartenberg*, the Plocicas' claims are based in tort against Defendants for their allegedly tortious conduct in the inadequate quality of care and treatment of Joe Plocica. Accordingly, since complete preemption is not present in this case and removal was therefore improper, Plaintiffs' Motion to remand should be granted.

## CONCLUSION

After considering the briefs of the parties, the applicable law, and the record in this matter, the Court determines that Plaintiffs' Motion to remand is meritorious and should be granted. Specifically, the Court concludes that Defendants have not carried their burden to demonstrate that

---

**4.** While Defendants cite the Court to a recent denial of remand Order in *Statum v. NYLCare Health plans of the Gulf Coast, Inc., et al.*, Civil Action No. 98–3547 (S.D.Tex.1998) in support of their removal in the present action, the Court respectfully finds that Judge Hittner's Order denying remand, consisting of only five lines and no legal reasoning or explanation for the decision, is not persuasive. As pointed out by Plaintiffs, the briefing in *Statum* did not present Judge Hittner with the *Ardary* decision or subsequent decisions which this Court finds sound and persuasive.

at least one of the causes of action alleged by Plaintiffs is subject to the complete preemption doctrine. Consequently, Defendants have not met their burden to establish entitlement to removal under the Medicare Act.

It is therefore ORDERED that Plaintiffs' motion to Remand is hereby GRANTED.

It is further ORDERED that the above-styled and numbered cause is hereby REMANDED to the state court from which it was removed.