296 F.3d 764
 Lucy Diane HOFLER, individually and as successor in interest of deceased, Louis Hofler, Plaintiff-Appellee,
v.
AETNA US HEALTHCARE OF CALIFORNIA, INC., fka Aetna Health Plans of California, Inc.; fka Aetna Health Management, Inc., a Delaware Corporation; Aetna U.S. Healthcare, Inc., a Pennsylvania Corporation; Aetna Services, Inc., a Connecticut Corporation; Aetna, Inc., a Connecticut Corporation, Defendants-Appellants.
 No. 00-56401.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 5, 2001.
 Filed July 10, 2002.
 
 Kirk A. Patrick, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, for the defendants-appellants.
 Michael J. Bidart and Jeffrey Isaac Ehrlich, Shernoff, Bidart & Darras, Claremont, CA, for the plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California; Virginia A. Phillips, District Judge, Presiding. D.C. No. CV-00-00160-VAP.
 Before: BROWNING, REINHARDT, and TALLMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Louis Hofler died of esophageal cancer that metastasized to his brain. At the time of his death, he was a 75 year-old retired bus driver, insured by Aetna's Medicare health care maintenance organization ("HMO") plan. Appellee Lucy Diane Hofler is his widow. She sued his health care provider, Aetna, and his doctors[1] in state court alleging that the defendants "withheld and denied Mr. Hofler medically necessary diagnostic exams, treatments, and referrals because these services undercut the defendants' profit margins." Aetna removed the case to federal court, claiming that Ms. Hofler's state law claims "arose under" the Medicare Act. The district court remanded the case to state court and awarded $9,750 in attorneys' fees to Ms. Hofler. Aetna now appeals the district court's fee award. We affirm.
 
 I. Background
 
 2
 Medicare provides health benefits primarily to people 65 years old or older. In 1997, Congress added the Medicare + Choice ("M + C") program to its Medicare plan. Under M + C, Medicare beneficiaries receive their Medicare benefits through private managed health care programs such as HMOs. Medicare Program; Establishment of the Medicare + Choice Program, 63 Fed.Reg. 34,968, 34,968 (June 26, 1998).
 
 
 3
 The regulations implementing M + C contain two preemption provisions: (1) a general preemption provision providing that inconsistent state laws are preempted, see 42 U.S.C. § 1395w-26(b)(3)(A); 42 C.F.R. § 422.402(a) and (2) specific preemption provisions superseding state standards in three areas including: (a) "Benefit requirements;" (b) "Requirements relating to inclusion or treatment of providers and suppliers;" and (c) "Coverage determinations (including related appeals and grievance processes for all benefits included under an M + C contract)." 42 U.S.C. § 1395w-26(b)(3)(B)(i)-(iii); 42 C.F.R. § 422.402(b)(1)-(3).
 
 
 4
 Aetna's HMO operates under the capitated system of payment, i.e., providers are paid a fixed amount per month for each enrolled patient regardless of how much care the patient receives. 42 C.F.R. § 422.208(a). In return the plan is to provide the patients all necessary covered care. Id. Congress and the Heath Care Financing Agency have authorized use of capitated payment. 42 C.F.R. § 422.208.
 
 
 5
 Mr. Hofler enrolled in Aetna's Medicare HMO which promised "more benefits than Medicare and most Medicare Supplements combined." Ms. Hofler alleged, however, that the care Mr. Hofler received "did not match Aetna's promises." As stated by the district court, she claimed that under Aetna's plan Mr. Hofler's doctors:
 
 
 6
 (1) left untreated for seven years an unstable aortic aneurysm[2] which grew to nearly twice the size at which surgical intervention was appropriate; (2) ignored his rising Prostate Specific Antigen level, which is an indication of prostate cancer, and refused to perform [various diagnostic tests] even when this index rose to six times the normal level; and
 
 
 7
 (3) failed to diagnose his esophageal cancer in its treatable stages, despite symptoms such as weight loss and expectoration of blood.
 
 
 8
 When Mr. Hofler asked for financial clearance for a second opinion about his esophageal cancer three months before he died, his doctor told him that although he was entitled to a second opinion, the clinic was unlikely to pay for it.
 
 
 9
 This combination of events allegedly caused Mr. Hofler's death: the late stage diagnosis of esophageal cancer meant that surgery was no longer practicable; the growth of his aneurysm meant that he was not a good candidate for aggressive chemotherapy; and his advanced prostate cancer foreclosed other treatments for his esophageal cancer.
 
 II. Proceedings Below
 
 10
 After Mr. Hofler died, Ms. Hofler filed a complaint against Aetna in California state court alleging 12 state law causes of action.[3] Aetna removed the action to federal district court, claiming that Ms. Hofler's action arose under and was completely preempted by Medicare. Ms. Hofler moved to remand to state court. The district court granted the motion and awarded attorneys' fees to Ms. Hofler. Aetna timely appealed the award of attorneys' fees.
 
 III. Standard of Review
 
 11
 Although an "order remanding a case to the State court from which it was removed is not reviewable on appeal," 28 U.S.C. § 1447(d), we have jurisdiction to review for abuse of discretion an award of attorneys' fees in connection with a remand order. Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1105 (9th Cir.2000). Abuse of discretion review requires us to examine de novo "whether the remand order was legally correct." Id. at 1106.[4]
 
 IV. Removal
 
 12
 An action can be removed from state court to federal court if it could have been filed in federal court originally. 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Because the removal in this case was based on federal question jurisdiction, the propriety of removal depends on whether the district court would have had federal question jurisdiction originally. Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The removal statute is "strictly construed against removal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir.1988).
 
 
 13
 Whether federal question jurisdiction exists is governed by the well-pleaded complaint rule. Caterpillar, 482 U.S. at 392, 107 S.Ct. 2425. Under this rule, the federal question must appear "on the face of the plaintiff's properly pleaded complaint." Id. Federal question jurisdiction lies for causes of action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally a complaint "arises under the law that creates the causes of action." Ethridge, 861 F.2d at 1394 (citation omitted).
 
 
 14
 Only state law causes of action are pled on the face of Ms. Hofler's complaint. See supra n. 3. "A state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law; (2) where the claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question."[5] ARCO Envtl. Remediation v. Dep't of Health and Envtl. Quality, 213 F.3d 1108, 1114 (9th Cir.2000) (citations omitted).
 
 A. Complete Preemption
 
 15
 Aetna argues that the M + C program's specific preemption provision completely preempts state law. Complete preemption is a "narrow exception to the `well-pleaded complaint rule.'" Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 (9th Cir.1993). It applies when Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Most federal statutes do not fall in this category. See Judge William W Schwarzer et al., Federal Civil Procedure Before Trial § 2:726.2 (2001). Even when federal statutes supersede certain state laws, they usually do not preempt state laws to such an extent that removal is proper. Id. at § 2:726.5.
 
 
 16
 "The test [for complete preemption] is whether Congress clearly manifested an intent to convert state law claims into federal-question claims." Holman, 994 F.2d at 668. Aetna has not shown that Congress intended to preempt all state law claims. In the interim final rule[6] for the M + C program, the agency stated that it was adopting a "narrow interpretation" of the specific preemption provisions and that state tort or contract claims relating to coverage determinations were not preempted. Medicare Program; Medicare + Choice Program, 63 Fed.Reg. 34,968, 35,012-35,013 (June 26, 1998). Because Congress did not clearly manifest any intention to convert all state tort claims arising from the administration of Medicare benefits into federal questions, we hold that the Medicare program does not completely preempt state tort law claims.
 
 B. Express Preemption Asserted as a Defense
 
 17
 Aetna also argues that Ms. Hofler's claims pertain to the treatment of health care providers and are therefore expressly preempted by the specific preemption provisions relating to requirements for inclusion or treatment of providers. See 42 U.S.C. § 1395w-26(b)(3)(B)(i)-(iii); 42 C.F.R. § 422.402(b)(1)-(3). Even if Ms. Hofler's claims could be interpreted as relating to the requirements for inclusion or treatment of providers, a point upon which we express no opinion, Aetna asserts this argument as a defense to Ms. Hofler's state law claims. It is well-established that, when Congress has not completely preempted the field, removal cannot be based on the assertion of a federal preemption defense, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Franchise Tax Bd., 463 U.S. at 14, 103 S.Ct. 2841; Metro. Life, 481 U.S. at 63, 107 S.Ct. 1542. Therefore, we reject Aetna's attempt to circumvent the requirements of the well-pleaded complaint rule through the assertion of a federal preemption defense.
 
 C. Arising Under Federal Law
 
 18
 Aetna also argues that Ms. Hofler's complaint arises under federal law because it was in actuality a complaint asking for benefits under the Medicare Act. The district court rejected this argument, relying on our decision in Ardary v. Aetna Health Plans of Cal., Inc., 98 F.3d 496, 502(9th Cir.1996), in which we held that a plaintiff's state law claims did not "arise under" Medicare and therefore could not be brought in federal court. Hofler now alleges that the district court misapplied Ardary. We disagree.
 
 
 19
 Ardary looked to Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), to determine whether Ardary's claims arose under Medicare, focusing on two inquiries. Ardary, 98 F.3d at 499. First, whether the state law claims relied on the Medicare Act for both standing and substance. Id. Second, whether the state law claims were "inextricably intertwined" with the denial of benefits. Id. at 500.
 
 
 1. Standing and Substance
 
 
 20
 Because Ardary's claims were based on state common law theories, the court found that Medicare did not provide standing and did not form the substance of the claims. Id. at 498-500. Similarly, because Ms. Hofler relies on state statutory and common law causes of action, some of which are identical to Ardary's, Medicare does not provide standing or substance for her state law claims.
 
 
 2. Inextricably Intertwined
 
 
 21
 The Ardary court also concluded that Ardary's state law claims were not inextricably intertwined with a claim for benefits. Id. at 500. The court found that the harm the Ardarys suffered would not be remedied by payment of benefits and therefore the harm was not inextricably intertwined with such a claim. Id. Here also, it is too late for the deceased Mr. Hofler to get a second opinion about his esophageal cancer, have a biopsy to diagnose his prostate cancer, or receive treatment for his aneurysm.
 
 
 22
 After applying the two-part test derived from Ringer, the Ardary court went on to consider whether Congress intended Medicare to preempt state law causes of action. Id. at 501. It noted the "strong presumption that Congress does not intend to preempt state law causes of action with a federal statute." Id. Considering the legislative history of Medicare, the court concluded that Medicare was not designed to "abolish all state remedies which might exist against a private Medicare provider for torts committed during its administration of Medicare benefits." Id. Aetna argues that Ardary is distinguishable because of the addition of the M + C program. Although M + C was added after Ardary was decided, Aetna pointed to no evidence in the legislative history to demonstrate that Congress intended, through the adoption of M + C, to completely preempt all state law causes of action. We find the reasoning of Ardary applicable here, and agree with the district court that Hofler's state law claims do not arise under the Medicare Act.
 
 V. Attorneys' Fees
 
 23
 The district court awarded fees because Aetna's removal argument was wrong as a matter of law, citing Balcorta, 208 F.3d at 1106 n. 6. Numerous courts have applied Ardary to state law claims and have concluded that there was no removal jurisdiction.[7] Even if Aetna's argument was colorable because of the addition of the M + C preemption provisions, attorneys' fees may be awarded. Such fees are proper when removal is wrong as a matter of law, even though the defendant's position may be "fairly supportable." Balcorta, 208 F.3d at 1106 n. 6. A fee award rendered under such circumstances is not punitive; it simply reimburses plaintiffs for "wholly unnecessary litigation costs" inflicted by the defendants. Moore, 981 F.2d at 447 (citation omitted). Because the district court did not abuse its discretion, we affirm the fee award.
 
 
 24
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Ms. Hofler named as defendants in her lawsuit: Aetna U.S. Healthcare of California, Inc.; Aetna Health Management, Inc.; Aetna U.S. Healthcare, Inc.; Aetna Services, Inc.; and Aetna, Inc. These defendants have appealed and will be collectively referred to as Aetna. She also sued Beaver Medical Group, Beaver Medical Clinic, Richard L. Sheldon, M.D., Edward S. Loh, M.D. and a number of Doe defendants. This second group of defendants is not party to this appeal
 
 
 [2]
 Bulging blood vessels, called aneurysms, occur when blood vessel walls are weakened or damaged. Although they can develop in any of the minor or major blood vessels in the body, they are most likely to be present in the aorta, the body's largest artery. The aorta brings blood from the heart and lungs to the rest of the body. Aortic aneurysms commonly occur in the abdomen but they also are found in the upper chest (thoracic aneurysm)What is An Aortic Aneurysm, at http://www.mayoclinic.com/findinformation/conditioncenters/invoke.cfm?objectid=FE3FE459-7D1E-405F-95E9339CD2E974B8. Mr. Hofler had a thoracic aneurysm.
 
 
 [3]
 Ms. Hofler's causes of action are: (1) breach of the duty of good faith and fair dealing; (2) wrongful death due to breach of the duty of good faith and fair dealing; (3) conspiracy to breach the implied covenant of good faith and fair dealing; (4) intentional misrepresentation; (5) negligent interference with a contractual relationship; (6) intentional interference with a contractual relationship; (7) breach of fiduciary duty; (8) unfair business practices; (9) false advertising; (10) intentional infliction of emotional distress; (11) negligent infliction of emotional distress; and (12) violations of California Civil Code § 1750
 
 
 [4]
 We also can overturn fee awards grounded on clearly erroneous factual findingsBalcorta, 208 F.3d at 1105 n. 5. However, appellants contend only that the district court reached an erroneous legal conclusion.
 
 
 [5]
 In its reply brief, Aetna appears to argue for the first time that Ms. Hofler's case raised a substantial disputed federal question and therefore the district court had jurisdiction underSparta Surgical Corp. v. NASD, 159 F.3d 1209, 1213 (9th Cir.1998). However, Sparta involved a federal statute that, unlike Medicare, provided for exclusive federal jurisdiction.
 
 
 [6]
 The final rule was published on June 29, 2000Medicare Program; Medicare + Choice Program, 65 Fed.Reg. 40,170 (June 29, 2000). It made no changes to the preemption provisions at issue here. See id. at 40,258-61.
 
 
 [7]
 See, e.g., Green v. Aetna U.S. Healthcare, Inc., No. C 00 1292 VRW, 2000 WL 1229226, at *3-*4 (N.D.Cal. Aug.18, 2000); Albright v. Kaiser Permanente Med. Group, No. C98-0682 MJJ, 1999 WL 605828, at *4-*5 (N.D.Cal. Aug.3, 1999); Kelly v. Advantage Health, Inc., No. CIV A 99-0362, 1999 WL 294796, at *3-*8 (E.D.La. May 11, 1999); Plocica v. Nylcare of Texas Inc., 43 F.Supp.2d 658, 663-64 (N.D.Tex.1999); Caputo v. U.S. Health Care Sys., No. CIV A 98-5542, 1998 WL 808611, at *2 (E.D.Pa. Nov.23, 1998); Wartenberg v. Aetna U.S. Healthcare, 2 F.Supp.2d 273, 277-79 (E.D.N.Y. 1998); Berman v. Abington Radiology Assoc., No. CIV A 97-3208, 1997 WL 534804, at *4 (E.D.Pa. Aug.14, 1997); Wright v. Combined Ins. Co. of America, 959 F.Supp. 356, 363 (N.D.Miss. 1997). See also McCall v. PacifiCare of Cal., Inc., 25 Cal.4th 412, 414-15, 419, 426, 106 Cal.Rptr.2d 271, 21 P.3d 1189 (2001) (holding that various state law claims did not fall within Medicare's exclusive review provisions and therefore did not require administrative exhaustion).