[No. D039779. Fourth Dist., Div. One. Jan. 21, 2003.]

FIDELIA ZOLEZZI, an Incompetent Person, etc., Plaintiff and Respondent, v.
PACIFICARE OF CALIFORNIA, Defendant and Appellant.

574

COUNSEL

K&R Law Group and Edward A. Stumpp for Defendant and Appellant.

Shernoff, Bidart & Darras, Michael J. Bidart and Jeffrey I. Ehrlich for Plaintiff and Respondent.

OPINION

McDONALD, J.—PacifiCare of California, doing business as Secure Horizons (PacifiCare), appeals an order denying its petition to compel arbitration

of the action filed against it by Fidelia Zolezzi, an incompetent person, by and through her guardian ad litem Daniel Zolezzi (Zolezzi). PacifiCare contends the trial court erred by concluding: (1) the federal Medicare Act (42 U.S.C. § 1395 et seq., hereafter the Act) does not preempt application of Health and Safety Code section 1363.1[1] and PacifiCare's noncompliance with section 1363.1's arbitration disclosure requirements precluded enforcement of the contractual arbitration provision; and (2) PacifiCare waived any right it had to require arbitration of the action. Because we conclude the Act does not preempt application of section 1363.1 in the circumstances of this case and the arbitration provision in question does not comply with section 1363.1, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

About January 1, 2000, Zolezzi enrolled in PacifiCare's Secure Horizons plan, a "Medicare + Choice" health care plan (Plan), as an alternative to Medicare coverage. About January 6 Zolezzi suffered a fracture of her left humerus. An X-ray showed a three-to-four-inch displacement of the humerus with dislocation at her shoulder. During the following months, two Plan orthopedic surgeons examined Zolezzi and recommended against surgery for the fracture because of her osteoporosis and fragile health and because surgery would not change her functional status. PacifiCare denied her primary care physician's request for a third opinion regarding surgery. Zolezzi independently obtained an opinion from R. Pantovich, a non-Plan physician, who concluded "surgical intervention with open reduction of [her] fracture and dislocation is definitely indicated." Based on that opinion, Zolezzi appealed the denial of a third opinion to the Center for Health Dispute Resolution (CHDR), which concluded PacifiCare must provide her with a third opinion of an orthopedic specialist regarding surgery.[3]

On May 22 a Plan hospital denied Zolezzi's request for authorization to admit her for surgery, stating her symptoms could be treated on an outpatient basis. On or about May 26 Pantovich examined Zolezzi again and concluded surgery was "essential to prevent embarrassment of the vascular and[/]or nervous system of the arm from the fractured end to the left [humerus] necessitating a possible amputation of the limb." He further concluded she was "strong enough to tolerate" surgery. Despite Pantovich's opinion, PacifiCare upheld the Plan hospital's denial of her request for

---

[1] All statutory references are to the Health and Safety Code unless otherwise specified.

[2] The facts set forth in this section are based on allegations in Zolezzi's first amended complaint.

[3] CHDR was under contract with the federal Health Care Financing Administration (HCFA) to review determinations made by Medicare + Choice organizations denying their Medicare enrollees payment or approval of medical services.

admission for surgery, stating a medical assessment of her health was required. It insisted that she undergo evaluations by various specialists, requiring multiple visits and transport. Zolezzi appealed to CHDR, which overturned PacifiCare's decision and directed it to provide surgery for her if she could be medically cleared. However, CHDR granted PacifiCare's request for reconsideration of its decision and allowed PacifiCare to condition Zolezzi's surgery on obtaining presurgical evaluations and clearances by specialists. Zolezzi sought review of CHDR's decision by a Social Security Administration administrative law judge (ALJ). An administrative hearing was held on December 15. On February 6, 2001, not having received a decision by the ALJ, Zolezzi underwent surgery to repair her fractured humerus; the surgery was performed by a non-Plan surgeon at her expense. Zolezzi tolerated the surgery well and subsequently physically healed. On February 7 the ALJ found PacifiCare "appropriately denied the surgical referral authorization."

On January 3, 2001, Zolezzi filed a complaint against PacifiCare and other defendants. On or about July 6 she filed a first amended complaint against PacifiCare and other defendants, alleging causes of action for: (1) breach of the duty of good faith and fair dealing; (2) conspiracy to breach the covenant of good faith and fair dealing; (3) negligent interference with a contractual relationship; (4) intentional interference with a contractual relationship; (5) intentional infliction of emotional distress; (6) breach of fiduciary duty; and (7) unfair business practices in violation of Business and Professions Code section 17200. On November 30 PacifiCare filed a petition to compel arbitration of those causes of action under the arbitration provision of the Plan, arguing section 1363.1, with which the parties concede the Plan's arbitration provision does not comply, was preempted by the Federal Arbitration Act (9 U.S.C. § 1 et seq., hereafter the FAA) and by certain provisions of the Balanced Budget Act of 1997 (BBA) and the Benefit Improvement and Protection Act of 2000 (BIPA), both of which amended the Act. The trial court denied PacifiCare's petition, finding the Plan's arbitration provision was unenforceable because of noncompliance with section 1363.1 and, alternatively, PacifiCare waived any right it had to require arbitration of Zolezzi's causes of action.

PacifiCare timely filed a notice of appeal.[4]

---

[4]The trial court's order denying PacifiCare's petition to compel arbitration is appealable pursuant to Code of Civil Procedure section 1294, subdivision (a). (*Pinedo v. Premium Tobacco Stores, Inc.* (2000) 85 Cal.App.4th 774, 777, fn. 1 [102 Cal.Rptr.2d 435]; *Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365, 1369 [62 Cal.Rptr.2d 27].)

DISCUSSION

I

*The Act Does Not Preempt Application of Section 1363.1 to Preclude Enforcement of the Contractual Arbitration Provision in This Case*

 PacifiCare contends the trial court erred by concluding the Act did not preempt application of section 1363.1 to preclude enforcement of the Plan's contractual arbitration provision in the circumstances of this case. It argues title 42 United States Code section 1395w-26(b)(3)(B) specifically preempts state standards, including those contained in section 1363.1.

A

"As part of its regulation of health care service plans, California imposes certain disclosure requirements as a predicate to the enforcement of arbitration clauses contained in plan subscriber agreements." (*Smith v. PacifiCare Behavioral Health of Cal., Inc.* (2001) 93 Cal.App.4th 139, 143 [113 Cal.Rptr.2d 140].) Section 1363.1 provides: "Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions:

"(a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice.

"(b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee.

"(c) The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both, and shall be substantially expressed in the wording provided in subdivision (a) of Section 1295 of the Code of Civil Procedure.

"(d) In any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately

before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan."[5]

In this case the trial court found PacifiCare did not comply with section 1363.1's disclosure requirements and therefore the Plan's arbitration provision was unenforceable. Because PacifiCare does not challenge the court's finding that it did not comply with section 1363.1's disclosure requirements, we need not set forth the specific arbitration language in the Plan and Zolezzi's enrollment form or substantively discuss their noncompliance with section 1363.1. Rather, we address only PacifiCare's contention that section 1363.1 is preempted by the Act in the circumstances of this case and the arbitration provisions of the Plan are therefore enforceable.

B

"The Medicare Act . . . , a part of the Social Security Act, established a federally subsidized health insurance program that is administered by the Secretary of Health and Human Services (the Secretary) through the Health Care Financing Administration (HCFA) [now known as the Centers for Medicare and Medicaid Services]. Part A of [the Act] covers the cost of hospitalization and related expenses that are 'reasonable and necessary' for the diagnosis or treatment of illness or injury. [Citation.] Part B of [the Act] establishes a voluntary supplementary medical insurance program for Medicare-eligible individuals and certain other persons over age 65, covering specified medical services, devices, and equipment. [Citation.] The Act provides for the delegation of Medicare benefit administration to HMO's [i.e., health maintenance organizations], which are authorized, pursuant to contracts with the HCFA, to manage benefit requests by Medicare beneficiaries. [Citation.]" (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 416 [106 Cal.Rptr.2d 271, 21 P.3d 1189].)

In 1997 the BBA amended the Act to add the Medicare + Choice (M+C) program as the new part C Medicare program. (Pub.L. No. 105-33 (Aug. 5, 1997) 111 Stat. 251, codified at 42 U.S.C. § 1395w-21 et seq.; *McCall v.*

---

[5]Code of Civil Procedure section 1295, subdivision (a) provides specific language that must be included in medical service contracts for enforcement of certain arbitration provisions: " 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, *will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process* except as California law provides for judicial review of arbitration proceedings. *Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.*' " (Italics added.)

*PacifiCare of Cal., Inc., supra*, 25 Cal.4th at p. 423; *Mass. Ass'n of Health Maintenance v. Ruthardt* (1st Cir. 1999) 194 F.3d 176, 177-178.) The M+C program "allows a new range of Medicare managed care options." (*McCall, supra*, at p. 423.) The BBA authorized the Secretary of Health and Human Services to establish certain standards for the M+C program. (42 U.S.C. § 1395w-26(b); *Pagarigan v. Superior Court* (2002) 102 Cal.App.4th 1121, 1139-1141 [126 Cal.Rptr.2d 124].) Those standards "shall be based on standards established under section 1876 [i.e., 42 United States Code section 1395mm (governing Medicare risk and cost contracts with HMO's and competitive medical plans)] to carry out analogous provisions of such section." (42 U.S.C. § 1395w-26(b)(2); *McCall, supra*, at p. 423.) "The BBA is noteworthy for its addition of an express limited preemption provision to [the Act]." (*McCall*, at p. 423.) The BBA added the following express *specific* preemption provision:

"*State standards relating to the following are superseded under this paragraph*:

"(i) Benefit requirements (including cost-sharing requirements).

"(ii) Requirements relating to inclusion or treatment of providers.

"(iii) *Coverage determinations (including related appeals and grievance processes)*." (42 U.S.C. § 1395w-26(b)(3)(B), italics added.)

The BBA also added an express *general* preemption provision: "The standards established under this subsection shall supersede any State law or regulation (including standards described in subparagraph (B)) with respect to Medicare + Choice plans which are offered by Medicare + Choice organizations under this part to the extent such law or regulation is inconsistent with such standards."[6] (42 U.S.C. § 1395w-26(b)(3)(A).)

On December 21, 2000, the BIPA was enacted, amending the Act to add a fourth category of *specifically* preempted state standards: "(iv) Requirements relating to marketing materials and summaries and schedules of benefits regarding a Medicare + Choice plan." (Pub.L. No. 106-554 (Dec. 21, 2000) 114 Stat. 2763, 2763A-561, codified at 42 U.S.C. § 1395w-26(b)(3)(B)(iv); *McCall v. PacifiCare of Cal., Inc., supra*, 25 Cal.4th at p. 423.)

---

[6]Because PacifiCare does *not* contend on appeal that this *general* preemption provision precludes application of section 1363.1 in this case, we do not address that issue or otherwise interpret the meaning of that preemption provision. We note that *Pagarigan v. Superior Court, supra*, 102 Cal.App.4th 1121 concluded the *general* preemption provision did not preclude application of section 1363.1 in that case. (*Pagarigan*, at pp. 1147-1149.)

## C

Interpretation of 42 United States Code section 1395w-26(b)(3)(B) and its application to section 1363.1 in the circumstances of this case are questions of law that we consider de novo. (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212 [100 Cal.Rptr.2d 718].)

■ In determining whether federal law preempts state law, there is a presumption that "in enacting laws, Congress does not intend to preempt state regulation of the same subject matter unless a contrary intent is made clear. [Citations.]" (*McCall v. PacifiCare of Cal., Inc., supra*, 25 Cal.4th at p. 422.) " 'It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so.' " (*New York Dept. of Social Services v. Dublino* (1973) 413 U.S. 405, 413 [93 S.Ct. 2507, 2513, 37 L.Ed.2d 688], quoting *Schwartz v. Texas* (1952) 344 U.S. 199, 202-203 [73 S.Ct. 232, 235, 97 L.Ed. 231].) *Pagarigan* stated: "Where (as here) Congress regulates a field historically within the police powers of the states (public health), we proceed from the assumption that state law is *not* superseded unless there is a 'clear and manifest purpose of Congress' to foreclose a particular field to state legislation. [Citations.]" (*Pagarigan v. Superior Court, supra*, 102 Cal.App.4th at pp. 1128-1129, original italics, fn. omitted.) "Although an express preemption provision may indicate congressional intent to preempt 'at least some state law,' a court must nevertheless ' "identify the domain expressly pre-empted" by that language.' [Citation.]" (*Id.* at p. 1137, quoting *Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470, 484 [116 S.Ct. 2240, 2250, 135 L.Ed.2d 700].) In determining the *scope* of an express preemption provision, it is presumed there is no preemption unless there is evidence of a clear and manifest congressional intent to preempt state law. (*Pagarigan, supra*, at pp. 1137-1138; *Medtronic, Inc., supra*, at p. 485 [116 S.Ct. at p. 2250].) Furthermore, although "Congress's intent 'primarily is discerned from the language of the pre-emption statute and the "statutory framework" surrounding it[, a]lso relevant . . . is the "structure and purpose of the statute as a whole," . . . as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.' [Citation.]" (*Pagarigan, supra*, at p. 1138, quoting *Medtronic, Inc., supra*, at pp. 485-486 [116 S.Ct. at pp. 2250-2251].) "Congressional intent may be found in the content of congressional reports on proposed legislation. In the absence of express congressional intent, the interpretation of a statute adopted by the federal agency charged with enforcing it is entitled to great deference. [Citations.]" (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 644, fn. 6 [58 Cal.Rptr.2d 89].)

 We believe the Act's express preemption of "[s]tate standards relating to . . . [¶] . . . [¶] [c]overage determinations (including related appeals and grievance processes)" is not clear and unambiguous. (42 U.S.C. § 1395w-26(b)(3)(B).) Construing that language narrowly, the Act could preempt only state standards that directly *relate to* coverage determinations, including, for example, procedures for obtaining payment or reimbursement for medical services. Construing that language broadly, as PacifiCare apparently suggests, the Act could preempt any state standard that is incidental or collateral to a coverage determination, based on the premise the standard is tangentially *related to* that determination. To properly interpret that statutory language, it is helpful to review analogous case law and relevant administrative agency interpretations.

### D

In *McCall v. PacifiCare of Cal., Inc., supra,* 25 Cal.4th 412, the court addressed the issue of whether state law causes of action against an HMO arising out of its denial of services under a Medicare-subsidized health plan were preempted by the pre-BBA Act's exclusive review provisions. (*Id.* at pp. 414-415.) *McCall* noted: "The determination whether an individual is entitled to benefits, and the amount of benefits, is entrusted to the Secretary in accordance with regulations prescribed by him or her. [Citation.] Judicial review of a claim for benefits is available only after the Secretary has rendered a ' "final decision" ' on the claim . . . . The relevant provisions . . . provide that a final decision by the Secretary on a claim 'arising under' [the Act] may be reviewed by no person, agency or tribunal except in an action brought in federal district court, and then only after exhausting administrative remedies . . . . [Citations.]" (*Id.* at pp. 416-417, fn. omitted.) *McCall* framed its issue as follows: "The question in this case, then, is whether the McCalls' complaint alleges a claim 'arising under' [the Act], even though none of the claims seeks payment or reimbursement of Medicare claims." (*Id.* at p. 417.) Under the Act's pre-BBA provisions, *McCall* concluded: "Congress left open a wide field for the operation of state law pertaining to standards for the practice of medicine and the manner in which medical services are delivered to Medicare beneficiaries." (*Id.* at p. 423.) *McCall* supported that conclusion by referring to the BBA's subsequent amendments to the Act that added express preemption provisions. (*Ibid.*) It stated: "By its terms, [the Act] now preempts state laws mandating benefits to be covered, mandating inclusion of providers and suppliers, and *coverage determinations.* (42 U.S.C. § 1395w-26(b)(3).) *Pursuant to the related regulations, determinations on issues other than whether a service is covered under a [M+C] contract fall outside the definition of coverage determinations.* (42 C.F.R. § 422.402 (1999).) *All other types of state laws not inconsistent*

*with Medicare standards are permitted. (Ibid.)" (McCall, supra,* at p. 423, italics added.) *McCall* then quoted language from the HCFA's request for comments on its interim final rule implementing 42 United States Code section 1395w-26(b)(3)(B). *(McCall,* at pp. 423-424.) That language, which we quote *post,* shows the HCFA interprets 42 United States Code section 1395w-26(b)(3)(B)(iii) narrowly as preempting only claims for coverage under a Medicare contract. *(McCall,* at pp. 423-424.) *McCall* concluded: "Absent clear indication of congressional intent, we decline to find preemption of claims, founded in California law, that find no remedy under the Medicare administrative process." *(Id.* at p. 424.) It noted: "A Medicare provider may violate state common law or statutory duties owing to beneficiaries, unrelated to its Medicare coverage determinations. The 'inextricably intertwined' language in [*Heckler v. Ringer* (1984) 466 U.S. 602, 614-615 [104 S.Ct. 2013, 2921-2022, 80 L.Ed.2d 622]] is more correctly read as sweeping within the administrative review process only those claims that, 'at bottom,' seek reimbursement or payment for medical services, but not a claim *not* seeking such reimbursement or payment, which claim as pleaded incidentally refers to a denial of benefits under the [Act]. [Citation.] The latter type of state-law-based claim by Medicare beneficiaries is not subject to the administrative review process and may be pursued in our state courts. In the language of *Ringer* . . . , such claims are collateral to, not inextricably intertwined with, Medicare benefit claims." *(McCall,* at pp. 424-425, original italics.) *McCall* described one type of collateral state law claim that is similar to Zolezzi's claims in this case: "[A] provider may fail to provide appropriate referrals to specialists, and thus prevent the beneficiary from obtaining appropriate care, . . . without regard to coverage." *(Id.* at p. 425.) *McCall* concluded that none of the state law causes of action alleged by the plaintiff necessarily implicated coverage determinations or fell within the Act's administrative review process, including causes of action for breach of fiduciary duty, negligent and intentional infliction of emotional distress, and violations of statutory duties (e.g., unfair business practices under Business and Professions Code section 17200). *(McCall,* at pp. 425-426.) *McCall* therefore held: "Because the McCalls may be able to prove the elements of some or all of their causes of action without regard, or only incidentally, to Medicare coverage determinations, because . . . none of their causes of action seeks, at bottom, payment or reimbursement of a Medicare claim or falls within the Medicare administrative review process, and because the harm they allegedly suffered thus is not remediable within that process, it follows that the Court of Appeal correctly reversed the trial court's orders sustaining defendants' demurrers without leave to amend." *(Id.* at p. 426, fn. omitted.)

In *Ardary v. Aetna Health Plans of California, Inc.* (9th Cir. 1996) 98 F.3d 496, the court noted the alleged injury could not be remedied by retroactive

authorization or payment of the denied Medicare benefit. (*Id.* at p. 500.) *Ardary* found "nothing in the legislative history to suggest that the [pre-BBA] Act was designed to abolish all state remedies [that] might exist against a private Medicare provider for torts committed during its administration of Medicare benefits pursuant to a contract with HCFA. [Citation.]" (*Id.* at p. 501.) It noted: "[*Bodimetric Health Services v. Aetna Life & Cas.* (7th Cir. 1990) 903 F.2d 480] should not be taken to imply that private Medicare providers and their representatives cannot be held responsible in their individual capacity for tortious acts committed in the context of the denial of Medicare benefits. The removal of the right to sue the private Medicare provider for its torts would result in an inequitable and substantial dilution of the rights of patients." (*Ardary, supra,* at p. 501.) *Ardary* concluded: "Because the instant state law claims do not 'arise under' the Act, we hold that the exclusive administrative procedures outlined for resolution of benefit determinations do not preempt the Ardarys' complaint."[7] (*Ardary,* at p. 501.)

Importantly, the HCFA's request for comments on its interim final rule implementing 42 United States Code section 1395w-26(b)(3)(B), effective July 27, 1998, states: "*We are adopting a narrow interpretation of the applicability of the three areas of specific preemption, which we believe is justified by the conference report language and the overall structure of the BBA in its delineation of the relative roles of the State and Federal governments.*" (63 Fed.Reg. 34968, 35012 (June 26, 1998), italics added.) It explains: "For M+C plans, the specific preemption of State laws in the three areas would prevent, for example, . . . laws that supplant or duplicate the Medicare coverage determination and appeal process as it relates to coverage of benefits under the M+C contract. *However, States may have various laws and requirements that could still apply to* [¶] . . . [¶] . . . *disputes between members and health plans, as discussed below.*" (63 Fed.Reg. 34968, 35013 (June 26, 1998), italics added.) It continues: "*We are* also *adopting a narrow interpretation of the scope of preemption of coverage determinations.* Coverage determinations are made initially by M+C organizations and may be appealed as provided for under subpart M of these regulations. Our view is that *the types of decisions related to coverage included in this specific preemption are only those determinations that can be subject to the appeal process of subpart M. These are decisions about whether an item or service is covered under the M+C contract and the extent of financial liability beneficiaries have for the cost of covered services under their M+C plan.* The Medicare appeal process applies to basic benefits, mandatory supplemental

---

[7]Those state law claims included causes of action for negligence, intentional and/or negligent infliction of emotional distress, and intentional and/or negligent misrepresentation. (*Ardary v. Aetna Health Plans of California, Inc., supra,* 98 F.3d at p. 498.)

benefits, and optional supplemental benefits offered under an M+C contract. *The specific preemption makes the Medicare appeal process the exclusive remedy for disputes over coverage determinations, displacing any State grievance or appeal process that might otherwise be available in such cases. However, the specific preemption does not preempt State remedies for issues other than coverage under the Medicare contract (i.e., tort claims or contract claims under State law are not preempted). The same claim or circumstance that gave rise to a Medicare appeal may have elements that are subject to State remedies that are not superseded. For example, an M+C organization's denial of care that a beneficiary believes to be covered care is subject to the Medicare appeals process, but under our interpretation of the scope of the specific preemption on coverage decisions, the matter may also be the subject of a tort case under State law if medical malpractice is alleged, or of a state contract law claim if an enrollee alleges that the M+C organization has obligated itself to provide a particular service under State law without regard to whether it is covered under its M+C contract."[8]* (63 Fed.Reg. 34968, 35013 (June 26, 1998), italics added.) In adopting its final rule, the HCFA retained its narrow interpretation of 42 United States Code section 1395w-26(b)(3)(B), noting: "We asserted our intention to adopt a narrow interpretation of the applicability of the three areas of specific preemption . . . to ensure that any regulatory preemption of State law would be restricted to the minimum level necessary consistent with the BBA." (65 Fed.Reg. 40170, 40313 (June 29, 2000).) Accordingly, 42 Code of Federal Regulations part 422.402 (2001) now provides regarding federal preemption of state law:

"(b) Specific preemption. As they might otherwise apply to the M+C plans of an M+C organization in a State, State laws and regulations pertaining to the following areas are specifically preempted by this part: [¶] . . . [¶]

"(3) Coverage determinations (including related appeal and grievance processes for all benefits included under an M+C contract). *Determinations on issues other than whether a service is covered under an M+C contract, and the extent of enrollee liability under the M+C plan for such a service, are not considered coverage determinations for purposes of this paragraph.*" (Italics added.)

E

Considering the language of 42 United States Code section 1395w-26(b)(3)(B)(iii), administrative rules and regulations, and analogous case law cited *ante*, we conclude the phrase "coverage determinations" in that statute

---

[8]As noted *ante*, much of that interpretation by the HCFA is quoted in *McCall v. PacifiCare of Cal., Inc.*, *supra*, 25 Cal.4th at pages 423-424.

should be interpreted in the same manner as in *McCall*, and therefore there is no federal preemption of state standards relating to resolution of state law causes of action that do not seek payment or reimbursement of a Medicare claim or otherwise fall within the Medicare administrative review process for coverage determinations. Absent clear indication of congressional intent, we decline to find preemption of standards, founded in California law, relating to resolution of claims, also founded in California law, that have no remedy under the Medicare administrative process. (*McCall v. PacifiCare of Cal., Inc., supra*, 25 Cal.4th at p. 424.) PacifiCare does not cite, and we have not found, any authority clearly indicating Congress intended the BBA's specific preemption statute to preempt state standards relating to resolution of state law causes of action that do not seek payment or reimbursement of a Medicare claim. On the contrary, there is authority to conclude preemption was not intended. The HCFA's administrative rules and regulations, quoted *ante*, show that agency believes Congress intended the BBA's specific preemption statute to narrowly apply only to disputes regarding coverage determinations (i.e., whether medical services or other benefits are covered by a M+C plan) for which the Act provides the exclusive means for resolution and appeal. As we noted *ante*, the HCFA stated: "*We are . . . adopting a narrow interpretation of the scope of preemption of coverage determinations.* Coverage determinations are made initially by M+C organizations and may be appealed as provided for under subpart M of these regulations. Our view is that *the types of decisions related to coverage included in this specific preemption are only those determinations that can be subject to the appeal process of subpart M. These are decisions about whether an item or service is covered under the M+C contract and the extent of financial liability beneficiaries have for the cost of covered services under their M+C plan.*" (63 Fed.Reg. 34968, 35013 (June 26, 1998), italics added.) In support of its narrow interpretation of the specific preemption statute, the HCFA cited the "conference report language and the overall structure of the BBA in its delineation of the relative roles of the State and Federal governments." (63 Fed.Reg. 34968, 35012 (June 26, 1998).) Furthermore, because the Act does not provide for tort, contract, or other remedies for claims that do not request payment or reimbursement of a Medicare claim for benefits, it can be reasonably inferred Congress did not intend to preempt state law causes of action that provide those remedies or state standards relating to resolution of those causes of action. A recent decision of the United States Court of Appeals, Ninth Circuit provides support for our interpretation: "[Appellant] has not shown that Congress intended to preempt all state law claims. In the interim final rule for the M+C program, the agency stated that it was adopting a 'narrow interpretation' of the specific preemption provisions and that state tort or contract claims relating to coverage determinations were not preempted. [Citation.] Because Congress did not clearly

manifest any intention to convert all state tort claims arising from the administration of Medicare benefits into federal questions, we hold that the Medicare program does not completely preempt state tort law claims." (*Hofler v. Aetna US Healthcare of California* (9th Cir. 2002) 296 F.3d 764, 768, fn. omitted.)

Based on our narrow construction of the BBA's specific preemption statute, it logically follows that 42 United States Code section 1395w-26(b)(3)(B)(iii) also does not preempt the application of state consumer protection statutes, including section 1363.1's arbitration disclosure provisions, which do *not*, expressly or implicitly, set forth *state standards* for *coverage determinations*. Section 1363.1, as quoted *ante*, does *not* set forth procedures required for arbitration or other resolution of Medicare *coverage determinations* or "displac[e] any State grievance or appeal process that might otherwise be available in [coverage determination] cases."[9] (63 Fed.Reg. 34968, 35013 (June 26, 1998).) Rather, section 1363.1 merely "imposes certain disclosure requirements as a predicate to the enforcement of arbitration clauses contained in plan subscriber agreements." (*Smith v. PacifiCare Behavioral Health of Cal., Inc., supra*, 93 Cal.App.4th at p. 143.) Because section 1363.1 does not provide an alternative to Medicare's exclusive review process for coverage determinations, 42 United States Code section 1395w-26(b)(3)(B)(iii) does not preempt it.[10] The Act's definitions of "appeals" and "grievances" do not support a different conclusion because those terms, as used in 42 United States Code section 1395w-26(b)(3)(B)(iii), merely relate to underlying "coverage determinations," which term relates to decisions on claims seeking payment or reimbursement of a Medicare claim.

F

PacifiCare also asserts the newly added specific preemption provision in 42 United States Code section 1395w-26(b)(3)(B)(iv) preempts the

---

[9]As Zolezzi notes, section 1363.1's grievance system may be one type of state standard that may be preempted by the BBA's specific preemption statute (at least to the extent it provides for an alternative to the Act's dispute resolution process for coverage determinations).

[10]Even were section 1363.1 construed as a state standard *relating to* Medicare's *coverage determinations* in certain circumstances, 42 United States Code section 1395w-26(b)(3)(B)(iii) should be narrowly construed to preempt section 1363.1's arbitration disclosure provisions only as to those causes of action that seek payment or reimbursement of Medicare claims for benefits. Therefore, because none of Zolezzi's causes of action against PacifiCare seek such relief, section 1363.1 would nevertheless apply to preclude PacifiCare's enforcement of the Plan's arbitration provision in the circumstances of this case. Like the causes of action alleged in *McCall v. PacifiCare of Cal., Inc., supra*, 25 Cal.4th 412, the causes of action alleged in Zolezzi's first amended complaint consist of various state common law and statutory claims, none of which, at bottom, seek payment or reimbursement for a Medicare claim for benefits.

application of section 1363.1 in the circumstances of this case. That provision specifically preempts state standards relating to "[r]equirements relating to marketing materials and summaries and schedules of benefits regarding a Medicare + Choice plan." (42 U.S.C. § 1395w-26(b)(3)(B)(iv).) However, that provision was added by BIPA's amendment of the Act on December 21, 2000, which was *subsequent* to all of the relevant or operative acts and omissions of which Zolezzi complains in her first amended complaint. PacifiCare concedes that amendment does not apply retroactively, and we are unaware of any authority showing it should apply retroactively. We agree with the reasoning of *Pagarigan v. Superior Court, supra*, 102 Cal.App.4th 1121, which concluded that the provision applies prospectively. (*Id.* at pp. 1149-1150.) Nevertheless, PacifiCare argues the *pertinent date* for application of that statute "is the date this Court rules on the petition to compel arbitration [or, alternatively, the date on which Zolezzi filed her complaint], not when [Zolezzi] signed her enrollment form." However, because PacifiCare's construction of 42 United States Code section 1395w-26(b)(3)(B)(iv) is not supported by any authority or compelling reasoning, we are not persuaded by its position. The relevant acts alleged in the first amended complaint primarily consist of Zolezzi's enrollment in the Plan and the actions and omissions of PacifiCare and its health care providers with respect to Zolezzi's fractured humerus, all of which occurred before December 21, 2000. Because PacifiCare did not comply with section 1363.1's arbitration disclosure requirements during that relevant period, 42 United States Code section 1395w-26(b)(3)(B)(iv) does not preempt application of section 1363.1 and therefore PacifiCare cannot enforce the Plan's arbitration provision in the circumstances of this case.[11]

## II

### *We Need Not Address the Waiver Issue*

Because we affirm the trial court's order on the ground that PacifiCare's noncompliance with section 1363.1 precludes its enforcement of the Plan's

---

[11]Because we conclude the Act's specific preemption provisions do not apply to the resolution of the causes of action in this case, we need not address PacifiCare's obtuse argument that the McCarran-Ferguson Act does not save section 1363.1 from federal preemption. Nevertheless, we agree with *Pagarigan*'s rejection of that argument. (*Pagarigan v. Superior Court, supra*, 102 Cal.App.4th at pp. 1134-1135.) To the extent PacifiCare asserts the FAA precludes application of section 1363.1 in the circumstances of this case, we adopt, and apply to this case, the reasoning in *Smith v. PacifiCare Behavioral Health of Cal., Inc., supra*, 93 Cal.App.4th at pp. 151-162; *Pagarigan, supra*, at pp. 1133-1134; and *Imbler v. PacifiCare of California, Inc.* (2002) 103 Cal.App.4th 567, 569-577 [126 Cal.Rptr.2d 715], all of which concluded the McCarran-Ferguson Act (15 U.S.C. § 1011 et seq.) operates to prevent the FAA from preempting application of section 1363.1 to preclude enforcement of a health care plan arbitration provision.

arbitration provision and the Act does not preempt application of section 1363.1, we need not address PacifiCare's contention that the trial court erred by alternatively concluding PacifiCare waived any right it had to enforce the arbitration provision. Nevertheless, we note PacifiCare would bear the burden to show that substantial evidence does not support the trial court's waiver finding and it is doubtful PacifiCare could meet that burden in the circumstances of this case. (See *Berman v. Health Net* (2000) 80 Cal.App.4th 1359 [96 Cal.Rptr.2d 295]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553 [94 Cal.Rptr.2d 201]; *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205 [69 Cal.Rptr.2d 79]; *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980 [72 Cal.Rptr.2d 43]; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951 [64 Cal.Rptr.2d 843, 938 P.2d 903]; cf. *Groom v. Health Net* (2000) 82 Cal.App.4th 1189 [98 Cal.Rptr.2d 836].)

## CONCLUSION

The order is affirmed. Zolezzi is entitled to costs on appeal.

Benke, Acting P. J., and Haller, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 2003.